JOSEPH A. DUARTE, #010603
101 N. 1st Avenue, Suite 950
Phoenix, Arizona  85003
Telephone: 602-326-5882
Attorney for Defendant
papoduarte@gmail.com

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>José Rodrigo Félix-Quiroz,<br><br>　　　　Defendant. | No. CR19-00089-PHX-JJT<br><br>**SENTENCING MEMORANDUM** |

　　　Comes now the Defendant, through counsel and requests a sentence below the PSR recommendation.  The client's absence of any criminal history, age and circumstances as a husband and father merit consideration of a sentence of no greater than 60 months.

**FACTS**

　　　Mr. Felix-Quiroz was the target of an investigation into trafficking arms for export without the complication of a federal license.  As the named co-defendants lined up to plea and prepare to testify against him, he required extraordinary legal representation to understand the full extent of the lodged charges and the criminal system exposure if he chose a trial.

　　　He failed to understand co-conspirator vicarious liability, complicity with persons known and unknown and the functional application of the federal sentencing guidelines. There is now a clear understanding of his circumstances in the wake of his plea, subsequent pretrial interview, and pre-sentence reports.

He has no prior criminal history as evidenced by zero criminal history points. He falls into category one. For a target, the government failed to follow up and corroborate the front-loaded prosecution theory that he was a major conduit of contraband.

-There was no forensic evidence in the form of recovered firearms, to corroborate his status as the major player of the gun trade that moved weapons to Mexico. His admissions and his plea were clear, but there are no trappings of the monetary benefits associated with a "mero-mero" status. I.E., no bank accounts with stores of liquid cash; no fleet of vehicles characteristic of a supervisor, no assets in bank accounts or other financial institutions; no lavish homes or residences.

-Provincialism - He moved in the Yuma area. Although he was domiciled in Mexicali, he had documents legally authorizing his presence in the U.S. His investigation was concentrated to bring to bear the guilt and complicity of every other figure who was accused in the indictment *as it enjoyed a nexus to him and his conduct*. The lack of follow up or corroboration is even more significant since he is the principal in every phase of the case.

-There are no violent crimes alleged in any counts of a 64-count indictment. He is named in each of the counts and is not alleged to have resorted to force in order to effectuate his plans. The objective was to paint him into a corner using the testimony of every other participant. The strategy was successful given the specter of cooperation enjoyed by each of the co-defendants who pled prior to his plea. A fair reading of the status of each of the co-defendants' respective positions showed that every one of them was poised to testify against him. In marked contrast, he never asked to discuss the case with the AUSA's or the case agents to fortify the cases brought against his co-defendants and alleged co-conspirators. This is unique because he could have provided tremendous information and direction against

persons named and unnamed involved in the charged activities. He did not choose to cooperate and avail himself of a potential 5K reduction. Every one of his co-defendants did, providing testimony through the respective factual bases for their respective pleas.

-It is highly unlikely that he would have avoided assault charges for the use of the weapons if he had been the main man for arms supply as implicitly suggested by the indictment and explicitly stated in the filings generated by the AUSAs. A similar rationale is applicable for the conspicuous absence of involvement by the defendant in drug trafficking activity which would have mandated consecutive sentences for the drug crime and then a consecutive term for use of a weapon in the commission thereof.

-Case sentences. 36 months was given to his cousin and co-defendant 2, Mr. Felix-Esparza. Co-defendant Samayoa-Villareal received 30 months. Moises Guadalupe Garcia Jr. received 10 months. Finally, Ms. Maila Margarita Lerma received a probationary/supervised release disposition. Mr. Feliz-Quiroz would merit consideration of something more along the line of what his co-defendants received.

-The PSR justification cites an unnamed case agent characterizing Mr. Felix-Quiroz as "a prolific weapons trafficker." This huge operation/investigation would presumable have yielded numerous weapons, hand-held firearms, long arms, automatic weapons, assault rifles, belt fed machine guns etc. Of the 57 listed firearms in the superseding indictment, a grand total of one weapon was recovered in Mexico. No corroboration substantiates that his weapons went to the cartels and were used in combat or the destination of any of the alleged weapons apart from the lone rifle recovered in Mexicali. Very odd for a prolific trafficker who ran the business in Mexico.

**ANALYSIS**

The recommendation of 78 months is excessive considering the history and characteristics pertaining to the case. "The crime of conspiracy to export firearms and ammo without a license is defined by two statutes, 22 U.S.C. section 2778 which generally prohibits its unlicensed export of certain defense articles and 18 U.S.C. section 371 which prohibits conspiracy to commit a federal offense." *Kuhali v. Reno*, 266 R.3d 93(2nd Cir.2001). "Possession by one member of the conspiracy is imputed to all other members." *U.S. v. Smith*, 918 F.2nd 1551, 1557(11th Cir.1990).

Mr. Felix-Quiroz is legally connected to each of the 64 counts in the indictment as a named co-conspirator. To counter the inflated range of sentence, the defense must examine the statute establishing his criminal liability.

The Arms Control Act section 2778 establishes the basic requirements for sale and export of American made military equipment and ammunition to foreign purchasers. Before a private exporter may sell any article contained on the [U.S. munitions list] he must apply for an export license from the U.S. State Department's Office of Munitions Control. The exporter must include in the application:

- -a description of the arms;
- -their ultimate destination;
- -and their intended use.

The Munitions Control Office then decides to grant the license based upon the information contained in the application.

*U.S. v. Schwartz*, 924 F.2nd 410, 416(2nd Cir.1991), *U.S. v. Covarrubias*, 94 F.3d 172, 175(5th Cir.1996).

It is clear from the thousands of pages of disclosure, witness statements, plea agreement from co-conspirators and ROI's that the government is able to produce a description of the arms involved, likely due to the agency's connections to gun dealerships

4

in the Yuma area. As noted above, there is only one disclosed instance of a weapon *recovered* in Mexico. This would have been an Achilles heel for the prosecution at trial. Likewise, the conspicuous absence of the trappings associated with the supervisory role assigned by U.S. Probation.

In factual terms, the government failed to follow the money, i.e., holdings, bank accounts, cash, or other instruments of monetary wealth. If he is as "prolific" as has been depicted by the case agent, there would be obvious indicia of wealth corroborating his status. Au contraire, he appears no different than the other co-defendants who readily denounced him to exploit a chance at a reduction of sentence at Mr. Felix-Quiroz' direct expense.

While the government can accurately surmise that the weapons were exported to Mexico, there is no elaboration as to the **ultimate destination** of any of the weapons alleged in the indictment or disclosure except for one. Moreover, there is no support for the **intended use** of the weapons beyond speculation. These are significant blind spots in the case that contravene the government's worst-case scenario endorsed by U.S. Probation.

The opinion expressed by the case agent quoted in the PSR lacks corroboration through evidentiary proof.

**PARITY**

The defense has gone back to 1991 to gather results in cases alleging criminal exportation of various articles and the sentences imposed. *U.S. v. Helmy*, 951 F.2nd 988 (9th Cir.1991) involved the Illegal exportation of a material to China. 436 lbs. of ablative carbon composite fabric were exported in violation of the Act. The defendant had no prior record. He was sentenced to 41 months prior to remand.

*U.S. v. Carper*, 659 F.3d 923 (9th Cir.2011) addressed military devices in the form of night vision devices that were sold by an active-duty Marine who understood the three recipients would direct the items to China. His sentence was 36 months.

*U.S. v. Mathers*, 528 Fed.Appx. 771(9th Cir.2013)(unpublished opinion) actually included military night vision goggles in an 11-count indictment. The defendant received a 48-month sentence. *U.S. v. Nwakwoala*, 478 Fed.Appx.(4th Cir.2012)(unpublished opinion) considered the export of six handgun and 1,180 rounds of ammunition. The sentence was 37 months.

Border cites also have precedents based on firearms and munitions. *U.S. v. Galvan-Revuelta*, 958 F.2nd 66(5th Cir.1992) was based on the interdiction of a smuggler attempting to drive ammo across the border into Mexico from El Paso, Tx. He received 24 months.

*U.S. v. Diaz-Gomez*, 680 F.3d 477(5th Cir.2012) was an El Paso export of a hidden semi-automatic weapon and 611 rounds of ammunition. The ultimate sentence handed down was 36 months.

*U.S. v. Sero*, 520 F.3d 187, adjudicated a case predicated upon the shipping of gun parts and ammunition to the Philippines. The defendant received a 40-month term.

Two co-defendants were charged in a scheme to export six Colt Carbine rifles, a Colt .38 super pistol, 200 pistol magazines and 25 AR15 magazines. The principal defendant received 57 months; the co-defendant received 36 months. *U.S. v. Flores*, 439 Fed.Appx. 337(5th Cir.2011)(unpublished opinion).

An operation indicted in Las Cruces, New Mexico was a multi-defendant firearm trafficking network, *U.S. v. Villalobos*, 2:CR487(related Westlaw cite 2012 WL4803848). It consisted of 193 firearms fraudulently purchased and illegally destined to people in Mexico. Various individuals falsely stated that they were the actual purchasers in violation of ATF form 4473, including the former Mayor of Columbus, New Mexico. The top end sentence was 90 months. Other co-conspirators were sentenced to 70 months, 46 months, and 24 months.

///

///

///

A West Texas case presented the issue of whether an extended magazine component for an AK-47 would support a higher range of sentencing guidelines. It is slightly misleading as the defendant ran a scheme where he exported thousands of rounds of ammo. *U.S. v. Gonzalez*, 792 F.3d 534 (5th Cir.2015). The defendant was handed a 63-month sentence.

Obviously, the Court is in the best position to use its history with similar cases for purposes of parity. It is well settled that "the Court's obligation [is to] impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." *Kimbrough v. U.S.*, 552 U.S. 85, 102, 128 S.Ct. 558, 169, 169 L.Ed. 2nd 481(2005). "The Court must make an independent determination, considering the particular circumstances of the case, the types of sentencing available, and the arguments of the parties." *Gall,* 552 U.S. @49, 50.

The need to avoid unwarranted disparities is only one factor a district court is to consider in imposing a sentence. *U.S. v. Marcial-Santiago*, 447 F.3d 715 (9th Cir.2006).

**REQUESTED RELIEF**

All issues considered, a possible range of sentence from 48 months to 60 months seems reasonable. Attached to the instant memorandum are two testaments providing character references for Mr. Felix-Quiroz. The defense prays for a sentence of no greater than 60 months.

Respectfully submitted this 23rd day of April 2021.

                                         *s/Joseph A. Duarte*
                                         JOSEPH A. DUARTE, Esq.
                                         Attorney for Defendant

*CERTIFICATE OF SERVICE*

*I HEREBY CERTIFY THAT ON APRIL 23, 2021, I ELECTRONICALLY TRANSMITTED THE ATTACHED DOCUMENT TO THE CLERK'S OFFICE USING THE CM/ECF SYSTEM, AND TO THE FOLLOWING ECF REGISTRANTS:*

*- The Honorable John T. Tuchi*

*- Caitlin Noel, Assistant U.S. Attorney*

*- David Pimsner, Assistant U.S. Attorney*

 *s/Joseph A. Duarte*